## Spring Valley Coal Company v. Mary Chiaventone,

### Gen. No 4,349.

1. GROSS NEGLIGENCE—*what constitutes.* It is gross negligence upon the part of a mine owner to permit heavily loaded cars to be sent down the incline of a passageway in a mine without light or attendant, or brake or signal of any kind, and with nothing to retard its speed except sprags in the wheels.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Bureau County; the Hon. RICHARD M. SKINNER, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

ALFRED R. GREENWOOD, for appellants.

J. L. MURPHY, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of Bureau county, awarding Mary Chiaventone $3,000 damages for negligently causing the death of her husband, James Chiaventone, in appellant's coal mine. The deceased was employed by appellant in its coal mines and was what is known as a "company" man. It was his duty to brush down the walls when apparently dangerous, and to load the loose rock and debris into cars and push them out to the haulways. On the 21st day of November, 1902, while engaged in pushing a car of rock out on what is called the southwest off the north fifth, he was struck by a car of coal coming down the fifth north and killed. This fifth north was a passageway for cars of coal, coming from the face of the coal to the southwest entry, leading to the shaft. The north fifth was, for a considerable distance back of the place of the accident, on an incline, so that cars of coal would run down toward the entry with a great speed by force of gravitation. It was the practice to load cars with coal, start them down this north fifth without any one in charge, without lights or signals of any kind, and to permit them to go down the incline. The second left was a

branch road that led to and connected by a switch with the north fifth. Loads coming out of the second left were brought to the junction with north fifth and thence over north fifth to the southwest entry, and thence to the bottom of the shaft. The deceased had brought a car of rock down out of second left to north fifth, and had pushed it to the latch, which is the point where the two tracks merge into one, and was in the rear of the car of rock, when a carload of coal came down from above in north fifth, and struck him, causing the injuries from which he died in a short time thereafter.

The evidence shows that the deceased was in the line of his duty and at a place where he was required to be. The place where deceased was caught was narrow, and while he made an effort, in the brief space of time he had after he saw the car of coal coming, to get to a place of safety, yet he only had time to get off the track and get against the rib of coal on the left, which was too near the car to afford him any protection, the distance being only about eight inches. Had there been any warning before the car was too close to permit him to take more than one step, he might have gone to the right and back a few feet and gotten into the mouth of the second left; but he did not have time for this movement, since the car came down almost noiselessly and there was no warning of any kind given. A Mr. Lucas, who was the only eyewitness to the accident, saved himself from injury by getting into the mouth of the second left, but he was on the right side and nearer to it than the deceased.

That appellant was guilty of gross negligence in permitting heavy loaded cars to be sent down this incline, without light or attendant, or brake or signal of any kind, with nothing to retard its speed except sprags in the wheels, only requires a statement of facts to show. This passageway was dark and narrow. The cars moved rapidly and without much noise, and employees were required to be on the line in front of the descending cars. It would seem that a moment's reflection would satisfy any reasonable

man that sooner or later this method of doing business would result in injury to some one.

There are five counts in the declaration, so counsel say in their brief, but since the declaration is not abstracted we take it for granted that the declaration is properly drawn and will support a verdict upon any theory of the evidence. We are not required to look at the record to see what the declaration contains. No complaint is made of any instructions given or any rulings of the court, on the trial, and only one refused instruction is complained of. The court gave sixteen instructions at the request of appellant, fully covering every question that was involved in the case. Even if the refused instruction be a correct proposition of law, the principle which it seeks to lay down is covered by another instruction, given for appellant. We cannot point out the particular instruction except to say it is found on page 78 of the abstract and is the third on that page. The instructions are not numbered either in the abstract or record, as is the usual and better practice. But we do not regard the instruction as correct, and there was no error in refusing it. If the declaration states such a case as is made by the proofs, the right of recovery is clear. No variance is urged and the declaration is not abstracted, so we conclude that if any grounds of objection existed, based on a variance between the case made by the proofs and the declaration, it is waived.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*